Yes, this is Tom Dreyer. Mr. Dreyer, Mr. Cassento, good afternoon to you both. And Mr. Dreyer, ready to proceed? Good morning. Good afternoon, your honor. Morning. Whenever you're ready. May it please the court. My name is Tom Dreyer. I represent the appellant in this matter. His name is Dante Lawrence. We're here today for oral argument in this matter. The Mr. Lawrence was sentenced by Judge Gavin to a term of imprisonment of a mandatory life penalty in Pennsylvania. Life means life. He will not get out of jail unless the court reverses Judge Papert's decision denying the habeas corpus petition in this matter. And Mr. Lawrence is victorious at a subsequent new trial. The only other way for him to escape death in jail would be for a future Pennsylvania governor to commute his sentence. And I don't think that that's very likely. So what we have here is in the opening statement, the prosecutor from the Chester County District Attorney's Office made a statement in the fifth sentence of his fifth sentence of his opening or opening statement that my client was a cold-blooded murderer. And that's the basis for the grant of the certificate of appealability by the court. Well, Mr. Dreyer, what he said was, those are the words, ladies and gentlemen, of a cold-blooded murderer, which we're slicing things so thin that in the mind of the average person, there's no distinction. But I think in the law, there would be a distinction between an attorney getting up, especially in opening statement. That's the problem. It's not closing. So applications have been cited with closing argument. To me, they're not very helpful. But there would clearly be a problem if a prosecutor got up and said in his opening statement, her opening statement, that is a cold-blooded murderer. I think it's a bit different how differently we can discuss if he says, after repeating the words that are going to come out in the testimony, those are the words of a cold-blooded murderer. Or maybe that's the distinction without the difference, but it's the kind of tedium, really, and trivia that courts spend their lives thinking about. Yes, Your Honor. So we have absolutely no evidence being presented. And we have a prosecutor who is subjecting the jury to what he thinks his witnesses may or may say once he starts calling them. And out of his own mouth, the representative of the sovereign, the attorney for the Commonwealth, states, however you slice it, directly to my client, that he is a cold-blooded murderer. That's outrageous. But let me ask you, at that point, the defense attorney has to make a decision. He has to make a decision as to whether he's going to object. If he objects and the court overrules the objection, that kind of suggests to the jury that, hey, it's all good. The judge will tell the jury, hey, no problem with that comment. If he objects and the objection is sustained and the judge turns to the jury and says, I want you to disregard that, that kind of reinforces the comment. As I understand counsel's testimony, he said he didn't object because he thought the better part of valor was discretion here. Just leave it alone. Was that not reasonable? That was not reasonable because in every other case then, the trial counsel could say the same thing. I didn't want to emphasize it. I didn't want the court to emphasize it. So you would never get into a decision that these comments were unconstitutional, that they violated the process. He's thinking about his guy in that courtroom. He's not worried about down the line. He doesn't want to draw more attention to that comment. I mean, that's my understanding of his testimony. Is that unreasonable? Is that unreasonable? I agree. I would argue that it is unreasonable. I see Mr. Breyer's strategic decision. Then the strategic decision is unreasonable. You didn't reserve time for rebuttal. Do you want to reserve time for rebuttal? Two minutes, please. Okay. Okay. I'm sorry. Go ahead. So the strategic decision would be unreasonable in my argument because the jury has heard this from the prosecutor, not from any witness, no evidence whatsoever, no facts whatsoever, simply a bold-faced statement in the first paragraph, the first five sentences of the opening. It's not like it's buried in the middle and it's not like at the end the prosecutor could have said, based on all the evidence which I just alluded to and that you're about to hear from the witness stand, I hope that at the end of the day, you come back and you find this particular defendant guilty of murder of the first degree. But to simply call him a cold-blooded murderer had to be responded to by defense counsel. Well, you know, the defense counsel could very well establish what he says in his opening very easily, I think, and then make the same comment in summation. No, I'm talking about the prosecutor. He can make the same comment in summation. And as Judge McKee stated, Your Honor, all these cases that are relied upon by the Commonwealth refer to statements made by the prosecutor during his closing argument. Closing argument. He's allowed to argue the facts that have been submitted into evidence during the course of the trial. What we have here is an opening, not an argument. We have an opening. No evidence yet presented by any witness. And he's basically, I mean, in my brief, I cite the various rules of professional conduct that he's violated by saying this. Mr. Dryer, counsel, in making that assumption, stand up before Jury and say, as I told you in my opening statement. In other words, he's bringing the jury back to what he said earlier, and he is going to now say, I have established what I told you in opening. What's wrong with that? That he can argue that the, in the closing argument, he could argue the evidence has established that this client is guilty, that this defendant is guilty of murder of the first degree. I wouldn't even think that in closing argument, you could use the word cold blooded murderer. But the idea that defense counsel is somewhat afraid to bring notice to this, I mean, the jury knows this is a murder trial. The jury knows that in the judge's opening remarks, he talked about the fact that it was a murder trial. So how can you be scared of somehow focusing attention on cold blooded murderer? That's the whole subject matter of the case. How about if defense counsel doesn't want to bring undue attention to something that might be established anyway? Well, once again, I can say that in my estimation, that is an unreasonable trial strategy. That is objectively unreasonable. Yeah, and we may agree with you, but the issue is, can it still get through all the hoops that you have to under the EDPA double deferential standard that we're dealing with here? Let's assume it's an unreasonable strategy. But it's not so unreasonable, it doesn't seem to me, that reasonable jurists would all say that by not objecting, you afford the ineffective assistance of counsel, that prejudice to defend it, because you still have to then get the prejudice wrong. And I'm sure Mr. Cassata may well argue, well, even if it were an effective assistance to not make an objection, you go to sidebar and do it, so you don't stress it and do it after the closing. So you don't stop it right at that point, you go to sidebar after closing and say, judge, I object to that and then move for mistrial. He said he wasn't at all sure the judge would grant a mistrial. And if he's not going to grant a mistrial, what's the use of objecting? For a curative instruction, judge? But that's like telling them, don't think about a pink elephant. I will bet everybody on the screen just saw a pink elephant in their minds. It's the kind of thing that I'm not sure you can give a curative instruction. But the presumption is that the jury files all instructions from the court. I mean, that's the bedrock of how a jury trial takes place. Well, it is. But then we have a lot of cases in the Supreme Court that there's some transgressions which are so blatant that you can't put the toothpaste back in the tube. But getting back to the prejudice prong, if the jury is going to hear that evidence anyhow, and in the closing argument, they're going to hear what he said before he fired the shots. And then in closing argument, the prosecutor comes back and says the same thing based upon the record that's established at that point in argument, and the judge is going to tell them, you know, what the lawyers say is not evidence. It's an argument. What I say is not evidence. You determine the evidence. You determine the fact based upon the evidence. You're going to hear all that. Then how do you establish prejudice? We could all guess that the jurors were in a very different mindset after their eyes were focused on this guy sitting there as being a cold-blooded murderer. Then they would not have been absent that statement. And all through the trial, that kind of polluted the way that they saw the evidence came in, really tainted them in terms of how they saw your client. That may all be true. But again, at the end of the trial, they're going to hear the same evidence, the same statement could arguably be made. Then how do you establish prejudice under Strickland? Well, I would argue even if he used the words cold-blooded murderer in his closing argument, that would be also objectively unreasonable. He could say, and based on all the evidence you've just heard, it's my request that you return a guilty of murder to the first degree. Which requires malice and accountability. You can't get murder to the first degree unless the jury is not going to hear it put to the judge by the judge in those terms. But you got to have malice to have any level of murder. And I'm not sure there's a big, when you define malice, hardness of heart, and I can't remember the exact formulation now, basically hardness of heart, cruelty, which gets pretty much the same as cold-blooded. And again, it comes down to the prejudice. I mean, speaking only for myself, I mean, I find it highly objectionable. I find the argument highly objectionable. Had I been the trial judge, I would have gone to sidebar, absent an objection, and had this conversation with the attorneys and then said something to the jury, unless the defense counsel asked me not to. And I know some of us would say, judge, leave it alone. We appreciate the offer, but leave it alone. I don't want you to say anything to the jury about it, which would be a very reasonable strategy. Mr. Dreier, didn't the trial court judge in this case at some point tell the jury that opening statements were not evidence and that notwithstanding all these studies suggesting that jurors make up their minds during opening, they shouldn't? Do we bake that into the equation? Yes, that certainly comes into the equation. And that instruction was given. And once again, we're all operating under the presumption that the jury followed that instruction as well. So- And I take it from your perspective, our matrix here is three Glantz cases, correct? I'm sorry, I didn't hear that. Yeah. So our matrix should really be evaluating these comments under Commonwealth versus Capella and Commonwealth versus Anderson. Judge, I would argue that those are closing argument cases. Yeah, but I couldn't find anything on- That's all we have. Yeah, that's all we have. And maybe that's why the COA was granted. Well, those help you. Those two cases help you, don't they? Capella and Anderson. And it's Clancy that doesn't necessarily help you, but that's after the fact. Is that your position? Yes, sir. Okay. But Mr. Dreyer, could the evidence at trial, specifically that Lawrence got out of his car, chased one and shot him five times, cure the problem that you're referring to? I would argue not. The evidence against Mr. Lawrence was basically two things. Number one, the testimony of Mr. Hall, which you just quoted, and the fact that he fled to Georgia sometime after the incident. There was no other evidence linking him, forensic, DNA, fingerprint, incriminating statements, other witnesses, to the fact of who it was out of the two people, Lawrence or Hall, pulled the trigger and shot the victim. So relying upon that, what I, in the brief, categorize as a weak Commonwealth case, that I think reinforces my argument about the unreasonability, objectively, of the opening statement. But there was evidence, wasn't there, that Lawrence was the shooter and not the other occupant? Yeah, only from the other person. Okay. So, Mr. Hall was the only one who testified that I saw Mr. Lawrence shoot this guy with a gun. There were no other witnesses to say that. So I guess, to finish my prior statement, if there had been five eyewitnesses to this in broad daylight, then obviously my argument would be much weaker. But the jury had to rely on a credibility decision, and I would argue that the prosecutor's opening basically told them which direction to look, and, you know, credit Mr. Hall and don't credit Mr. Lawrence. Lawrence did testify and say it was Hall? Yes, he did. And they were the only two people there. They were the only two people in the van, driving around Coatesville. So they're the only ones who were eyewitnesses to what happened. Well, if Lawrence testified and said it was Hall that was the shooter, and the jury then had to take for a given that the words that were spoken were the words of a cold-blooded murderer, they still had to decide whether or not the cold-blooded murderer was Lawrence or Hall. Correct. You're saying that mine was so poisoned from the very beginning, there's no way in the world they could make an objective determination of that. Yes. And once again, no physical evidence linking my client to the murder. They searched for a gun, couldn't find it. They had five shell casings. They tested them for DNA, nothing linking those shells to my client. They were unable to test them for fingerprint. So once again, nothing linking those five shell casings to my client. How long after the shooting was he arrested? Months. I don't know exactly. Okay. Months. No issue of any stippling of anything like that? No. He was in Georgia when he was picked up. Right. That's right. Mr. Dreier, did your client testify in his own defense? He did. And he testified that he was there and that it was the other fellow, Hall, who shot and killed the victim. Okay. I didn't know whether he did or not, but then it boils down to a question of credibility, doesn't it? Yes. That was the major jury issue. Who pulled the trigger out of these two gentlemen? Who pulled the trigger? Okay. Thank you. We have some time remaining, Mr. Dreier. You did reserve two minutes, but unless my colleagues have other questions, maybe we should hear from your colleague, Mr. Cassenta. Thank you, sir. Mr. Cassenta? Mr. Cassenta, Chief Deputy District Attorney of Chester County. Your Honor, we're dealing with whether or not the Pennsylvania proceedings resulted in an unreasonable application of Strickland. My argument is it did not. First, you look at the ineffectiveness standard. You have to give deference to counsel. You have to do a presumption that he was effective. He had to make a split-second decision, should I object? He later explained, I wasn't sure whether the judge would consider it objectionable. I didn't want a cautionary instruction, draw more attention to it. Judge wasn't going to grant a mistrial in his view, so he just wanted to leave it alone. In his opening, he got up and said, the wrong guy sitting at this table. It should be Mr. Hall. He's the killer here. The prosecutor's opening statement, which was basically the same, would come back and his closing statement was, what we had here, the defendant was upset that someone tried to break into his home. He thought he saw a jacket the person was wearing. He calls his friend Hall, tells him what happened. On the way over, Hall sees somebody who he says had that jacket. The defendant says, let's go look for him. They look for him. They basically find him. He gets out of the car, plugs in with several shots. That's essentially the case. However, there's some side notes. The defendant's girlfriend was very concerned that he was going to do something stupid and had several times tried to stop him. He kept saying, leave me alone. It's none of your business. It's none of your business. Then the two main witnesses, Hall and the defendant, agreed on basically 99% of what happened. The only issue they disagree with is, who did the shooting? Then the question is, who had the motive? Obviously, the defendant did. He's the one who thought someone tried to break into his house. He's the one who sought out his friend Hall to come and give him a ride. Counsel had more than a rational explanation. He knew what evidence was going to be presented by the Commonwealth. It wasn't a question. He could have objected. If he objected and the judge said, overruled, then he's sitting there. Obviously, if the Commonwealth didn't present the evidence to support such an allegation, he'd have a great closing argument. You heard the Commonwealth- You'd have a mistrial at that point. He went, well, yeah, at that point, he could have said that, but he's closing through and said, if you heard the Commonwealth, he made this statement. He didn't back it up. It ultimately came down to credibility between the two witnesses. Both of them testified extensively. Jury had the opportunity to observe both of them. They could make that credibility finding. They saw those witnesses. The judge told them, arguments of counsel are not evidence. It's the only evidence you have to consider is what comes from the witness stand. He said that a couple of times, at least during the trial. If your honors have any questions, I'll be happy to answer them, but I think I've summarized our argument. Yeah, no, and Mr. Dry, reserve some time for rebuttal, but I mean, it's really clear here what the issues are. I don't want to snap the two minutes away from you, Mr. Dry, that you reserved your entitlement to, but I mean, we know what the issues are. Confining your rebuttal to what Mr. Cassata argued, if you want to take two minutes of your time, go ahead, but it's pretty clear here what we have to do and try to wrestle with. I understand, Judge. That's fine. Mr. Dry, thank you. You'll have no idea how many times I've tried to send a hint to counsel, either on the one side or the other side, whether it was a strong case or a weak case. The response is always, I'll judge briefly, your honor, and it's never brief. It's never brief.  I like to keep it short and sweet, Judge. Okay, we do too, so thank you very much. We appreciate it. We'll take it under advisement.